**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**TID–BIT PRODUCTS COMPANY et al., Respondents.**

No. 78–1070.

United States Court of Appeals, Sixth Circuit.

May .1, 1980.

Elliott Moore, William R. Stewart, Deputy Associate Gen. Counsels, Richard A. Cohen, N.L.R.B., Washington, D. C., Bernard Levine, Director, Region 8, N.L.R.B., Cleveland, Ohio, for petitioner.

S. Stuart Eilers, Keith Ashmus Thompson, Hine & Flory, Cleveland, Ohio, for Tid-Bit Products Co.

Lawrence M. Oberdank, Reimer & Oberdank, Cleveland, Ohio, for Meatcutters Dist. Union 427, Amalgamated Meatcutter and Workmen of North America, AFL–CIO.

Before CELEBREZZE, LIVELY, and KEITH, Circuit Judges.

### ORDER

On December 5, 1977, the National Labor Relations Board (hereinafter the "Board") issued an order pursuant to Section 10(e) of the National Labor Relations Act, as amended (61 Stat. 136, 73 Stat. 519, 88 Stat. 395, 29 U.S.C. Sec. 151 *et seq.*), (the "Act") against Meatcutters District Union 427, Amalgamated Meatcutter and Workmen of North America, AFL–CIO, (hereinafter the "Union") and the Tid-Bit Products Company, Division of Fairmont Foods Company (hereinafter the "Company"). The Board seeks enforcement of an order based on its findings that the Union violated Section 8(b)(1)(A) of the Act by threatening Rosemary Bodgen with job-related reprisals be-

cause she initiated particular grievance proceedings; that the Union violated Section 8(b)(2) and (1)(a) of the Act by attempting to cause and causing the company to post Bodgen's job for bids, with the clearly foreseeable result that she would be laid off because of such activity; and that the Company violated Section 8(a)(3) and (1) of the Act by acceding to the Union's demand that it post Bodgen's job for bids, with the clearly foreseeable result that she would be laid off because of such activity. Our standard of review is whether there is substantial evidence on the record as a whole to support the Board's findings.

In January, 1976, one of the two employees who worked in the testing lab for the Company quit the lab position. While there was conflicting evidence as to whether the Company regularly followed the procedure of posting such vacancies, this procedure was adhered to with the lab vacancy.

After an eligible employee attempted the lab position, the Company Plant Manager advised the Union Business Representative that he did not want to post the job again but rather preferred to assign the job to Ms. Rosemary Bodgen. As an employee, Ms. Bodgen, had the least seniority in the plant and was in lay-off status at the time because of a production cutback. Ms. Bodgen was contacted and informed the Company would like her to fill the lab tester's position, and that an informal agreement had been reached with the union officials so that the lab testing position would not have to be posted again.

During the five month period she worked in the lab, there were no employee complaints or grievances about Bodgen's working despite her low seniority or having obtained the lab job without its having been posted for bids. However, on two different days Ms. Bodgen worked in the plant at the direction of the Company. On the first of these two days, Ms. Bodgen told the Company Manager that she did not think she belonged out there in the plant because her low seniority could draw protest from other production employees. She was told that she should follow instructions. The second time she worked on production Ms. Bodgen heard rumors that employees were upset because she was doing production work, while production people with more seniority were on layoff.

On June 30, the Union held a general membership meeting which was open for questions and complaints. It is significant that prior to this meeting no one raised the question of Ms. Bodgen's seniority, and no employee complained about Bodgen's working in the lab. However, during the meeting Ms. Bodgen told the Business Representative that she thought she was entitled to a "progressive raise" under the contract based upon her length of service. Bodgen then asked whether the contract provisions calling for overtime equalization by departments or classifications applied to the lab.

On the surface these questions appear extremely innocent. However, the other lab employee had been receiving overtime pay under the same conditions that overtime pay was denied Ms. Bodgen. Coincidentally, the other lab employee was also the Chief Steward's housemate of several years.

In essence the Board found that the reassignment and subsequent layoff of Ms. Bodgen occurred because she raised the issue of equalization pay which offended the Chief Steward apparently because the Chief Steward's roommate was the recipient of favorable discrimination with respect to salary amount and overtime pay.

Because we find there is substantial evidence on the record as a whole, the order of the Board is entitled to be enforced. Accordingly, it is so ordered.